**TRENK, DiPASQUALE,
DELLA FERA & SODONO, P.C.**
347 Mount Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
973-243-8600
Joseph J. DiPasquale, Esq. (jdipasquale@trenklawfirm.com)
Thomas M. Walsh, Esq. (twalsh@trenklawfirm.com)
Robert S. Roglieri, Esq. (rroglieri@trenklawfirm.com)
*Proposed Counsel to Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WOLVERINE TAXI LLC, *et al.*,[1] | Case No. 17-22500 (VFP) |
| Debtors. | (Joint Administration Pending) |

**DECLARATION OF EVGENY FREIDMAN
IN SUPPORT OF FIRST DAY MATTERS**

EVGENY FREIDMAN, pursuant to 28 U.S.C. § 1746, hereby certifies as follows:

1.      I am the president, managing member, sole director and/or sole shareholder of Ben-Khe Trans. Corp. ("Ben-Khe"), Bimbo Taxi LLC ("Bimbo"), Byblos Taxi Inc. ("Byblos"), Cartier Taxi Inc. ("Cartier"), Dragonfly Taxi Inc. ("Dragonfly"), Ducati Taxi Inc. ("Ducati"), Golden Beetle Taxi LLC ("Golden"), Grasshopper Taxi LLC ("Grasshopper"), Jolly Hacking Corp. ("Jolly"), London Taxi LLC ("London"), Moth Taxi LLC ("Moth"), NY Kind Taxi Corp. ("NY Kind"), Pelican Taxi LLC ("Pelican"), Privet Taxi Inc. ("Privet"), Purlie Trans Corp.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  Ben-Khe Trans. Corp. (5171); Bimbo Taxi, LLC (4424); Byblos Taxi Inc. (0124); Cartier Taxi Inc. (5866); Dragonfly Taxi Inc. (2717); Ducati Taxi Inc. (3698); Golden Beetle Taxi LLC (0754); Grasshopper Taxi LLC (7964); Jolly Hacking Corp. (9772); London Taxi LLC (3648); Moth Taxi LLC (5666); NY Kind Taxi Corp. (9879); Pelican Taxi LLC (3534); Privet Taxi Inc. (6023); Purlie Trans Corp. (9032); Saint Tropez Taxi Inc. (7500); Split Transit Inc. (4948); Trestomos Trans Inc. (1824); Wasp Taxi LLC (3309); and Wolverine Taxi LLC (1883).

("Purlie"), Saint Tropez Taxi Inc. ("Saint Tropez"), Split Transit Inc. ("Split Transit"), Trestomos Trans Inc. ("Trestomos"), Wasp Taxi LLC ("Wasp"), and Wolverine Taxi LLC ("Wolverine," each a "Debtor" and collectively with Ben-Khe, Bimbo, Byblos, Cartier, Dragonfly, Ducati, Golden, Grasshopper, Jolly, London, Moth, NY Kind, Pelican, Privet, Purlie, Saint Tropez, Split Transit, Trestomos, and Wasp, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases.

2. In my capacity as president and/or managing member of each of the Debtors, I am familiar with the Debtors' day-to-day operations, financial affairs, business affairs and books and records. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (i) my personal knowledge; (ii) my review of relevant documents; (iii) information supplied to me by other members of the Debtors' management team or professionals retained by the Debtors; or (iv) my opinions based on my experience and knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

3. On June 19, 2017 (the "Petition Date"), the Debtors filed with this Court voluntary petitions ("Petitions") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), as well as certain motions and other pleadings (collectively, the "First Day Pleadings").

4. The Petitions and First Day Pleadings are intended to enable the Debtors to operate effectively and efficiently within these chapter 11 cases, as well as to avoid certain adverse consequences that might otherwise result from without commencement of these Chapter 11 Cases. The Debtors file this First Day Declaration in support of the following first day motions: (1) Debtors' Motion for an Order Extending the Debtors' Time to File their

Schedules of Assets and Liabilities and Statement of Financial Affairs and (2) Debtors' Motion for an Order Directing Joint Administration of the Debtors' Chapter 11 Cases. As set forth herein, joint administration is appropriate in this instance as the Debtors all share a secured lender and each of the Debtors has the same ownership and management.

## THE DEBTORS' BUSINESSES

**Background**

5. The Debtors are in the business of leasing taxicab medallions. Each Debtors' primary asset are the two to three medallions (collectively, the "Medallions") issued by the New York City Taxi and Limousine Commission ("TLC"). These Medallions permit the Debtors, and/or its lessees and sublessees, to perform taxi services in New York City and the surrounding areas. The Debtors also have possession of and access to certain vehicles that are operated with the permission granted through the Medallions (the "Vehicles"). Upon information and belie, certain Vehicles are owned directly by the Debtors while other Vehicles are owned by non-debtor companies.

6. The taxi services provided by the Vehicles, through the use of the Medallions, include taxi services within New York City, but also to the surrounding areas, including New Jersey. The Vehicles frequently make trips to areas within New Jersey, including Newark International Airport, Jersey City, Hoboken and West New York. In addition, the taxi drivers reside in both New Jersey and New York.

7. The Debtors own the following Medallions:

| Debtor Entity | Medallion Numbers |
|---|---|
| Ben-Khe Trans. Corp. | 5J66/67 |
| Bimbo Taxi, LLC | 7H92/94 |
| Byblos Taxi Inc. | 6G25/7P42 |
| Cartier Taxi Inc. | 8K71/ 72 |

3

| **Debtor Entity** | **Medallion Numbers** |
|---|---|
| Dragonfly Taxi Inc. | 1R30/31 |
| Ducati Taxi Inc. | 3M85/86/87 |
| Golden Beetle Taxi LLC | 1R34/35 |
| Grasshopper Taxi LLC | 1R32/33 |
| Jolly Hacking Corp. | 1H37/ 38 |
| London Taxi LLC | 2K63/70 |
| Moth Taxi LLC | 1R28/29 |
| NY Kind Taxi Corp. | 6J56/57 |
| Pelican Taxi LLC | 1R46/47 |
| Privet Taxi, Inc. | 2V20/21 |
| Purlie Trans Corp. | 9M94/95 |
| Saint Tropez Taxi Inc. | 2N72/86 |
| Split Transit Inc. | 5L42/43 |
| Trestomos Trans Inc. | 5P83/84 |
| Wasp Taxi LLC | 1R36/37 |
| Wolverine Taxi LLC | 3R32/33 |

8. Upon information and belief, as of the Petition Date, the following 25 Medallions are in the physical custody and possession of the TLC, pursuant to an improper repossession by Melrose Credit Union ("Melrose"), the primary secured lender to each of the Debtors:

| **Debtor Entity** | **Improperly Repossessed Medallion Number** |
|---|---|
| NY Kind Taxi Corp. | 6J56 |
| Byblos Taxi Inc. | 6G25/7P42 |
| Cartier Taxi Inc. | 8K71/72 |
| London Taxi LLC | 2K63 |
| Saint Tropez Taxi Inc. | 2N86 |
| Ducati Taxi Inc. | 3M85/87 |
| Privet Taxi, Inc. | 2V20/21 |
| Trestomos Trans Inc. | 5P83/84 |
| Purlie Trans Corp. | 9M94/95 |
| Ben-Khe Trans. Corp. | 5J66 |
| Split Transit Inc. | 5L42 |
| Moth Taxi LLC | 1R28 |
| Grasshopper Taxi LLC | 1R32 |
| Golden Beetle Taxi LLC | 1R34/35 |

4

| **Debtor Entity** | **Improperly Repossessed Medallion Number** |
|---|---|
| Pelican Taxi LLC | 1R46/47 |
| Wasp Taxi LLC | 1R36 |
| Wolverine Taxi LLC | 3R33 |

(collectively, the "Seized Medallions").

9. Upon information and belief, all of the Medallions are currently suspended by the TLC as a result of Melrose's actions.

10. Each of the Medallions is leased from the Debtor to another entity ("Non-Debtor Entities"). Each lease for a Medallion creates net revenue for each Debtor of $1,300 per month, taking into account all expenses associated with the utilization of the Medallions and operation of the Vehicles, including insurance coverage, vehicle maintenance and repairs.

11. The business and corporate structure described above pursuant to which the Debtors, as holding companies, lease their Medallions to a Non-Debtor Entities, who in turn operates those Medallions by subleasing them to individual drivers, is typical in the industry. This is the structure pursuant to which virtually the entire New York City commercial taxicab industry has operated.

12. Pursuant to this structure, Melrose has no relationship with the Non-Debtor Entities or the driver. Thus, as discussed below, while the Medallions and certain of the Vehicles serve as collateral for Melrose's loans, it has no right to pursue the Non-Debtor Entities for payment of the Debtors' obligations despite the fact that the revenues generated by the Vehicles may be generated through Non-Debtor Entities.

13. The Medallions are the lifeblood of the Debtors' business – without the Medallions, the Debtors' business is at a standstill.

14. Thus, any foreclosure by Melrose has a ripple effect on the Debtors and the many individuals, creditors, and jobs that rely on the Debtors' Medallions. A foreclosure on any of the Medallions owned by the Debtors would mean that: (i) the Debtors lose their Medallions to its lender and lose their ability to operate their businesses; (ii) the Non-Debtor Entities lose the use of the Medallions and the ability obtain revenue from the Vehicles; and (iii) numerous taxicab drivers lose their jobs driving the Debtors' medallioned cabs.

15. Through these Chapter 11 Cases, the Debtors seek to avoid this result, continue operating their businesses, keep taxicabs on the road around the clock and ensure that the taxicab drivers that rely on the Medallions keep their jobs.

**Company Assets**

16. The main asset of each of the Debtors is their respective Medallions. As set forth above, certain Debtors own the Vehicle associated with the Medallions while other Vehicles are owned by Non-Debtor Entities.

17. The Debtors value each of the Medallions at approximately $200,000 to $225,000 each. This estimate is based on recent sales of other medallions in the marketplace.

## EVENTS LEADING TO CHAPTER 11 CASES

18. Prior to the entrance of Uber, the TLC restricted cab licenses to approximately 13,605 taxicab medallion licenses and 51,398 people licensed to drive them. At that time, 368 of the licenses had been auctioned by the City of New York in three separate auctions between November 2013 and March 2014 at prices averaging $1,250,000 per medallion.

19. While expansive TLC regulations make it costly for medallion owners to operate their medallions and vehicles, medallion owners were protected as part of the virtual monopoly created by the TLC for taxicab drivers.

20. In 2014, Uber entered the taxicab market and had a deep impact on the revenues of medallion holders. Moreover, the TLC made a determination that Uber and other ride-sharing companies were not subject to the strict rules and regulations placed on taxicabs. As a result, thousands of ride-sharing drivers began taking taxicab market share and, importantly, taxicab profits. Accordingly, medallion holders are no longer able to demand the rents for the medallions that medallion holders were accustomed. Similarly, the value of the medallion dropped as drivers no longer needed a medallion to enter the ride sharing market.

21. Moreover, as set forth in more detail below, Melrose has seized and repossessed the Seized Medallions and placed the Seized Medallions in storage with the TLC. As a result, the TLC has suspended the Seized Medallions and the Debtors are no longer able to operate the associated Vehicle as a taxicab.

22. By filing the Petitions, the automatic stay will give the Debtors the breathing spell they need to reorganize their operations, negotiate with creditors, and propose a plan providing for fair payments to Melrose based on the value of the Medallions (i.e. collateral) and the revenues that can be achieved from leasing the Medallions and Vehicles.

## CAPITAL STRUCTURE

### Secured Debt

23. The original principal amount of each Debtor's loan with Melrose is as follows:

| Debtor Entity | Original Principal Loan Amount[2] | Original Maturity Date | Original Interest Rate |
|---|---|---|---|
| Ben-Khe Trans. Corp. | $1,640,000.00 | 1/7/18 | 3.75% |
| Bimbo Taxi, LLC | $1,300,000.00 | 6/30/16 | 4.75% |
| Byblos Taxi Inc. | $1,300,000.00 | 6/30/16 | 4.75% |

---

[2] The Debtors dispute the amount of each of the Balloon Notes. The principal loan amounts listed herein are based on the face of each Balloon Note.

7

| **Debtor Entity** | **Original Principal Loan Amount**[2] | **Original Maturity Date** | **Original Interest Rate** |
|---|---|---|---|
| Cartier Taxi Inc. | $1,300,000.00 | 6/30/16 | 4.75% |
| Dragonfly Taxi Inc. | $1,920,000.00 | 6/5/17 | 4.00% |
| Ducati Taxi Inc. | $1,950,000.00 | 6/30/16 | 4.75% |
| Golden Beetle Taxi LLC | $1,920,000.00 | 6/5/17 | 4.00% |
| Grasshopper Taxi LLC | $1,920,000.00 | 6/5/17 | 4.00% |
| Jolly Hacking Corp. | $1,500,000.00 | 1/7/18 | 3.75% |
| London Taxi LLC | $1,300,000.00 | 6/30/16 | 4.75% |
| Moth Taxi LLC | $1,920,000.00 | 6/5/17 | 4.00% |
| NY Kind Taxi Corp. | $1,200,000.00 | 2/11/18 | 3.75% |
| Pelican Taxi LLC | $1,920,000.00 | 6/5/17 | 4.00% |
| Privet Taxi, Inc. | $1,400,000.00 | 9/7/15 | 3.75% |
| Purlie Trans Corp. | $1,400,000.00 | 10/4/15 | 3.75% |
| Saint Tropez Taxi Inc. | $1,300,000.00 | 6/30/16 | 4.75% |
| Split Transit Inc | $1,600,000.00 | 1/8/19 | 3.75% |
| Trestomos Trans Inc. | $1,400,000.00 | 9/7/15 | 3.75% |
| Wasp Taxi LLC | $1,920,000.00 | 6/5/17 | 4.00% |
| Wolverine Taxi LLC | $1,920,000.00 | 6/5/17 | 4.00% |

(collectively, the "Balloon Notes").

24.    The Debtors' indebtedness under each of the Balloon Notes was secured by a Security Agreement (each a "Security Agreement" and collectively, the "Security Agreements") executed by each respective Debtor for the benefit of Melrose and a Balloon Note by and between Debtor and Melrose.[3]

25.    Melrose alleges that each of the Debtors defaulted under the Balloon Notes. As a result, Melrose has filed actions on the Balloon Notes against each of the individual Debtors (collectively, the "State Court Actions").

---

[3] Debtors reserve the right to challenge the extent, validity, amount, and priority of Melrose's asserted liens.

26. Following the alleged defaults under the Balloon Notes, Melrose hired Dezba Asset Recovery Inc. to seize and repossess each of the Medallions. After repossessing certain of the Seized Medallions, Melrose placed the Seized Medallions in the custody of the TLC and the Seized Medallions were suspended and the associated meters were locked. Upon information and belief, all of the Medallions are currently suspended. Thus, none of the Debtors are currently operating their Medallions.

27. In addition to the State Court Actions, on June 1, 2017, Melrose filed a verified complaint seeking the imposition of a receiver for the following Debtors: NY Kind, Byblos, Cartier, London, Saint Tropez, Ducati, Privet, Trestomos, Purlie, Ben-Khe, Split Transit, Moth, Grasshopper, Golden Beetle, Pelican, Wasp, and Wolverine (the "<u>Receivership Action</u>"). On June 6, 2017, an Order to Show Cause was entered in the Receivership Action. A hearing on the Order to Show Cause was scheduled for June 20, 2017 at 9:30 a.m. in the Supreme Court of the State of New York, Queens County.

28. Through this bankruptcy, the Debtors intend to recover the Seized Medallions, have the Seized Medallions reinstated, and begin the normal operation of the Debtors' business, which will permit the Debtors to operate their property under the protections afforded under Chapter 11.

**Unsecured Debt**

29. In addition to the foregoing, the Debtors are parties to pending personal injury litigation matters, a number of which are for alleged significant injuries. Information regarding that litigation will be set forth in the Debtors' bankruptcy schedules. Some of these personal injury claims have already been asserted but there are also contingent claims related to accidents

that have occurred prepetition, but for which no formal claim has yet been asserted as of the Petition Date.

30. In addition to the pending personal injury actions, the TLC asserts unsecured claims against the Debtors for violations in addition to payments due under the Taxi Improvement Fund. Upon information and belief, the Internal Revenue Service and New York State Department of Taxation and Finance also assert unsecured claims against the Debtors.

## REORGANIZATION STRATEGY

31. Pursuant to section 542 of the Bankruptcy Code, the Debtors will recover each of the Medallions and the Vehicles, if any, that were seized by Melrose, which are property of the bankruptcy estates, and will pursue a reorganization that will be in the best interests of all creditors and stakeholders.

32. The Debtors intend to continue operating their businesses in the ordinary course, including, upon return of the Medallions to the Debtors, by affixing the Medallions to Vehicles, and leasing them thereby restoring the revenue stream.

33. The Debtors intend to confirm of a plan of reorganization which will, among other things, restructure and/or challenge the Balloon Notes to permit payment of the Melrose's claims over time, while also providing for payment of allowed claims of other creditors.

I certify the foregoing statements made by me are true. I am aware if any of the foregoing statements are willfully false, I am subject to punishment.


Dated: June 20, 2017                              /s/ *Evgeny Freidman*
                                                  EVGENY FREIDMAN

4814-5217-0314, v. 2